**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Integrated Molding Concepts, Inc.,** | ) | **CASE NO. 1:07 CV 2617** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Stopol Auctions, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

### Introduction

This matter is before the Court upon defendants Stopol Auctions LLC's and Stopol, Inc.'s Motion to Dismiss Amended Complaint (Doc. 63). For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

### Facts

Plaintiff, Integrated Molding Concepts, Inc. (hereafter, plaintiff or IMC), filed this case in Minnesota State Court. The case was then removed to the United States District Court, District of Minnesota, where an Amended Complaint was filed against defendants Stopol

1

Auctions, LLC and Stopol, Inc. (collectively hereafter, defendants)[1] The District of Minnesota subsequently transferred the case to this Court based on a forum selection clause contained in the parties' contract. The Amended Complaint alleges the following facts.[2]

Plaintiff is a Minnesota corporation in the business of plastic injection molding. Defendant Stopol Auctions, LLC (hereafter, Auctions) is an Ohio limited liability company in the business of auctioning manufacturing equipment to the general public. Defendant Stopol, Inc. (hereafter Stopol) is an Ohio corporation.

Plaintiff had been looking for an extended period of time for an injection molding machine that was larger in capacity and had certain specifications to meet customer needs. Auctions mailed an auction bill to plaintiff promoting an auction of plastic manufacturing equipment on behalf of Cornerstone Products, Inc. This auction bill advertised a 1987 Cincinnati Injection Molding Machine which fit plaintiff's requirements. Plaintiff was informed that the machine (referred to hereafter as the larger unit) could be purchased at a predetermined price prior to the auction.

Plaintiff arranged to purchase the larger unit for $30,000.00 in advance of the auction. A copy of the proposal was faxed by Auctions to plaintiff. Plaintiff acknowledged purchasing the larger unit by signing and returning the proposal, as well as timely wiring funds to purchase the

---

[1] Does I through IV and Moes I through IV were also named but have not been identified.

[2] Plaintiff submits two affidavits, with documents affixed, to its brief in opposition. The Court has not considered this evidence as such is not permitted by Rule 12(b)(6). Accordingly, defendants Stopol Auctions LLC's and Stopol, Inc.'s Motion to Partially Strike Memorandum in Opposition to Motion to Dismiss (Doc. 68) is granted.

unit. Thus, a written purchase contract was made.

Following the purchase of the larger unit, plaintiff participated in an auction and purchased another unit with smaller specifications (referred to hereafter as the smaller unit).

Plaintiff then contracted with Stopol to dismantle, rig, and deliver both units to plaintiff's manufacturing facility in Little Falls, Minnesota. Plaintiff paid Stopol $47,400.00 to ship the larger unit to its manufacturing facility.

Stopol and/or Auctions sold the larger unit to a third party, Vincent Industrial Plastics (hereafter, Vincent), Inc., a Kentucky corporation. Instead of delivering the purchased larger unit, Stopol delivered an inferior unit to plaintiff pawning it off as the purchased machine. Upon receipt of the two units that were hauled and installed at plaintiff's manufacturing facility, the specifications were checked and it was learned that Stopol failed to deliver the purchased larger unit. Stopol instead delivered a different unit that did not meet plaintiff's requirements.

Immediately upon learning that the larger unit was not delivered, plaintiff contacted Stopol and/or Auctions. After initially denying the wrong delivery, both entities acknowledged the error. Plaintiff was able to determine that the purchased larger unit was delivered to Vincent, who currently has possession of the unit and has refused to deliver possession to plaintiff. (Doc. 32 ¶¶ I- XIX).

Plaintiff thereafter filed its Amended Complaint which sets forth seven claims for relief. Count One alleges breach of purchase contract. Count Two alleges breach of delivery contract. Count Three alleges negligence. Count Four alleges conversion. Count Five alleges equitable relief. Count Six alleges quantum merit and unjust enrichment. Count Seven alleges fraud and misrepresentation.

This matter is now before the Court upon defendants Stopol Auctions LLC's and Stopol, Inc.'s Motion to Dismiss Amended Complaint. Defendants move pursuant to Federal Rules of Civil Procedure 12(b)(6) and (7).

**(1) Nonjoinder**

Defendants maintain that the Amended Complaint must be dismissed due to the nonjoinder of Vincent. The Sixth Circuit has recognized that "the resolution of the question of joinder under Rule 19, and thus of dismissal for failure to join an indispensable party under Rule 12(b)(7), involves a three-step process." *Keweenaw Bay Indian Community v. State,* 11 F.3d 1341 (6th Cir. 1993) (citations omitted) First, this Court must first determine whether Vincent is a necessary party under Rule 19(a):

> (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave the parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

If this Court finds that Vincent falls within either one of these provisions, then it is to be joined if feasible. The Court must then consider steps two and three: the issues of personal jurisdiction and indispensability. If personal jurisdiction is present, the party shall be joined. If personal jurisdiction is absent, the court proceeds to the third step, which involves an analysis of the factors set forth in Rule 19(b) to determine whether the court may proceed without the absent party or whether the case must be dismissed due to the indispensability of that party. *Id.* The rule is not to be applied in a rigid manner. *Id.*

4

Defendants assert that Vincent claims an interest herein as the owner and possessor of the larger unit.  Defendants point to plaintiff's demand that the larger unit be delivered to plaintiff.  Defendants contend that if such relief were granted, but not entered against the absent Vincent, defendants may be required to take the machine from a non-party thus creating a substantial risk of inconsistent obligations.  Plaintiff, however, asserts that it is seeking money damages and is not requesting possession of the larger unit.

Decisions to dismiss based on nonjoinder of parties are to be made pragmatically and based on the particularized context of each case.  *PaineWebber, Inc. v. Cohen,* 276 F.3d 197 (6th Cir. 2001) (citations omitted).  Although at the conclusion of the Amended Complaint plaintiff seeks a return of the larger unit, the individual counts request money damages under various theories of recovery. In that plaintiff is contesting the joinder of Vincent, it appears that plaintiff is abandoning its request for the return of the larger unit and only seeking money damages.

Defendants' request to dismiss the Amended Complaint based on nonjoinder is denied.

**(2) failure to state a claim**

Defendants assert that all claims, with the exception of Count One, fail to state a claim.

**Standard of Review**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff.  *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999).  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor.  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997).  However, the complaint must contain "more than the bare assertion of legal

5

conclusions." *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) (emphasis in original).

**Discussion**

**(a) Count Two**

Count Two alleges breach of a delivery contract. The Amended Complaint alleges that following the purchase of the larger unit, plaintiff contracted with Stopol to arrange for its rigging and delivery. Plaintiff paid $47,400.00 to Stopol to cover the shipping expense. Stopol breached the contract by failing to deliver the larger unit. Plaintiff also incurred substantial expenses in preparing its facility for delivery of the larger unit, and plaintiff has been unable to fulfill its obligations to third parties.

Defendants assert that there was no separate delivery contract apart from the sales contract. Defendants point out that the proposal (attached as Exhibit B to the Amended Complaint) faxed by Stopol and signed by Leon Fischer, plaintiff's principal, was a sales proposal that incidentally provided a "ship to" address and stipulated that "freight is to be paid by buyer." The Terms and Conditions on its reverse side further provided:

> **DELIVERY**. In addition to the Purchase Price, Buyer shall be responsible for all delivery costs including, but not limited to rigging and transportation from Owner's place of business, insurance, packaging, handling, and related expenses. In no event shall Stopol be liable for any fees, loss or damage caused by or in connection with any delay in delivery of the Equipment or any other cause.

Relying on *Delorise Brown, M.D., Inc. v. Allio*, 86 Ohio App.3d 359 (8th Dist. 1993),

6

defendants assert that the predominant purpose of the contract was for the sale of goods and that delivery of the unit (i.e., service) was incidental to the sale.

The issue in *Delorise Brown* was whether Article 2 of the Uniform Commercial Code, applicable to the sale of goods and not services, controlled a contract for the sale of a computer system which included installation and labor. The court recognized that

> Ohio courts apply the predominate purpose test when reviewing a mixed contract for goods and services. The issue is whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods with labor incidentally involved.

Upon review of the evidence, the court concluded that the contract, which included the sale of equipment and called for a specified number of hours of training and installation, was primarily for the acquisition of a computer system with installation and labor incidental to that purpose.

In the case herein, the proposal attached to the Amended Complaint shows a price of $30,000.00 for purchase of the larger unit. Unlike *Delorise Brown,* there was allegedly a subsequent contract for delivery of the larger unit. The Amended Complaint alleges that following the purchase of the units, plaintiff contracted with Stopol to dismantle, rig and deliver both units to plaintiff's manufacturing facility. It is further alleged that plaintiff paid Stopol $47,400.00 to cover the shipping expense of the larger unit which was not delivered. At this stage, the Court accepts as true that plaintiff had a separate contract with defendants for delivery of the larger unit.

Dismissal of Count Two is not warranted.

**(b) Count Three**

Count Three alleges negligence. Defendants assert that Ohio's economic loss rule bars

this claim. For the following reasons, this Court agrees.

In *Mgt. Inc. v. Shook, Inc.,* 106 Ohio St.3d 412 (2005), the Ohio Supreme Court [3] explained that the economic loss rule

> prevents recovery in tort of damages for purely economic loss... [A] plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable... This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that parties to a commercial transaction should remain free to govern their own affairs... Tort law is not designed ... to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation... remains the particular province of the law of contracts.

Accordingly, the economic loss rule precludes the negligence claim.

Plaintiff points to other cases which it asserts permit the claim herein. The cases, however, are inapposite because they involve other services performed by the defendants which gave rise to tort claims. In *Dawn Court Associates v. Cristia,* 115 Ohio Misc.2d 54 (Medina Cty. Aug. 23, 2001), the court recognized that an action against a roofing contractor for breach of the duty to perform services in a workmanlike manner is an action in tort although it arises out of contract. *Barton v. Ellis*, 34 Ohio App.3d 251 (Ohio 10th App. Dist. 1986), also involved the duty to perform construction services in a workmanlike manner. The case herein does not involve such a duty. Also, *Knauber v. Smith and Schnacke,* 42 Ohio App.3d 1 (Ohio App. 1st Dist. 1987), concerned negligent breach of a contract for legal services. It has been recognized, however, that "the Ohio Supreme Court has not been consistent in following the economic loss

---

[3] The Court has applied Ohio law to this dispute because the contract states, "This agreement shall be interpreted and enforced in accordance with the laws of the state of Ohio, without regard to the choice or conflict of law rules otherwise applicable." Am.Compl. Ex. B.

8

rule in the area of professional malpractice." *Trustcorp. Mtge. Group v. Zajac*, 2006 WL 3690299 (Ohio App. 1st Dist. December 15, 2006 ) This case does not involve the rendition of professional services.

Count Three is dismissed.

**(c) Count Four**

Count Four alleges conversion. Defendants assert this tort claim fails as a matter of law because of the existence of the breach of contract claim.[4] For the following reasons, this Court agrees.

"[U]nder Ohio law, the existence of a contract claim generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Continental Casualty Co.*, 647 F.2d 705, 710 (6th Cir. 1986). *See also Davis Diamond Galerie, Inc. v. Silverman Jewelers,* 106 Fed. Appx. 341 (6th Cir. 2004) (Affirming the district court's holding "that Ohio law does not recognize a tort claim premised upon the same actions as those upon which the plaintiff bases a breach of contract claim unless the plaintiff identifies some duty or misrepresentation by the breaching party independent of the contract.") and *Lightbody v. Rust*, 2003 WL 21710601 (Ohio 8th App. Dist. July 24, 2003) (citations omitted) ("The courts have consistently ruled that a suit arising from a single instance cannot be classified as both a tort and breach of contract... That the acts alleged would be tortious conduct under noncontractual circumstance does not make a breach of a contract a tort. It is not a tort to breach a contract, no matter how willful or malicious the breach.")

---

[4] Defendants assert that Counts Three (negligence) and Seven (fraud), also torts, fail on this basis as well.

9

Plaintiff does not dispute this law but asserts that it satisfies the elements of conversion. Plaintiff, however, cannot proceed with this tort claim where the breach of contract claim already exists. Moreover, plaintiff states that it has alleged duties owed by defendants independent of the contract. Plaintiff, however, fails to identify any such duties other than the duty to perform the contract.

Count Four is dismissed.

**(d) Count Five**

Count Five alleges that plaintiff is entitled equitable relief. Plaintiff alleges that due to defendants' actions, plaintiff delayed in bringing this action. Plaintiff also alleges that equitable remedies should be granted to make plaintiff whole if it is determined that defendants did not have the authority to sell the larger unit.

Defendants contend that the claim sets forth no cognizable basis for recovery. Plaintiff does not specifically address this claim and, presumably, agrees that it should be dismissed.

Count Five is dismissed.

**(e) Count Six**

Count Six alleges quantum merit and unjust enrichment. Defendants argue that this count fails because an express contractual claim exists. This Court agrees

In the absence of fraud or bad faith, Ohio law prohibits recovery under a theory of unjust enrichment/quantum merit where an express contract covers the same subject. *R.J. Wildner Contracting Co., Inc. v. Ohio,* 913 F.Supp. 1031 (N.D.Ohio 1996) (citations omitted). "Any fraud or bad faith that negates the operation of this rule must occur in the formation of the contract." *Id.*

10

Due to the existence of the contract claim and the absence of an allegation of fraud in the formation of the contract, discussed below, this count fails to state a claim.

Count Six is dismissed.

**(f) Count Seven**

Count Seven alleges fraud and misrepresentation.  For the reasons stated above with regard to the assertion of tort claims where a contract exists, this count fails.  In particular, in *Davis Diamond Galerie, Inc., supra.,* the Sixth Circuit affirmed the district court's dismissal of the fraud and misrepresentation claims because they were premised on the same actions as those upon which the breach of contract claim was based.  The Amended Complaint herein alleges that plaintiff relied upon defendants' representations that they had authority to sell the larger unit and that they could properly rig and transport the unit to plaintiff's manufacturing facility.  Plaintiff paid $30,000.00 for the larger unit and $47,000.00 for its shipment, but did not receive it.  These are the same allegations upon which the breach of contract is based.

Additionally, defendants assert that the fraud and misrepresentation claim fails because plaintiff fails to allege that defendants made their purported representations without intention to perform them at the time the contract was formed.  Further, plaintiffs have failed to allege with particularity facts showing that the promises were false when made as required by Fed.R.Civ.P. 9(b).

A plaintiff may only prevail upon a claim for promissory fraud if he proves that the defendant made a promise without the present intention of performing.  *See, for e.g., Langford v. Sloan*, 162 Ohio App.3d 263 (Ohio App. 2d Dist. 2005).  Plaintiff asserts that the Amended Complaint references intentional nonperformance as evidenced by the following allegations:

11

- Auctions either intentionally or negligently sold plaintiff's unit to a third party (¶ 29)
- Defendants covered up their wrongdoing by making false claims that the unit was mis-marked or that plaintiff or others were responsible for the delivery of the wrong unit (¶ 46)
- Defendants secreted the fact as to the identity of the true owners of the larger unit, and the retention of the money paid by Vincent for this same unit shows a willful indifference to the rights of plaintiff and/or intentional misconduct (¶ 47)

The Court agrees with defendants that these allegations do not include the required contention that defendants did not intend to sell the unit to plaintiff at the time the contract was made. Furthermore, conclusory allegations of a subsequent cover-up are insufficient to show that defendants made a promise without the present intention of performing. Finally, although plaintiff alleges that defendants hid the true identity of the owner of the larger unit, plaintiff alleges elsewhere in the Amended Complaint that the auction bill showed that defendants were auctioning the equipment on behalf of Cornerstone. Thus, whether defendants or Cornerstone owned the equipment is irrelevant as to whether defendants intended to sell the unit to plaintiff at the time the sale was made.

Count Seven is dismissed.

**Conclusion**

For the foregoing reasons, defendants Stopol Auctions LLC's and Stopol, Inc.'s Motion to Dismiss Amended Complaint is denied as to Counts One and Two and granted as to the remaining counts.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/11/07